UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANTE B. MAGDALUYO, JR., )<br>　　　　　　Plaintiff, )<br>vs. )<br>　　　　　　　　　　　　　　　　)<br>MGM GRAND HOTEL, LLC, et al., )<br>　　　　　　Defendants. ) | Case No. 2:14-cv-01806-RFB-GWF<br>**ORDER**<br>**Motion to Compel (#87) and**<br>**Motion for Sanctions (#88)** |

This matter is before the Court on Plaintiff's Motion to Compel (#87) and for Sanctions (#87), filed on January 5, 2016. Defendant filed its Opposition (#91) on January 22, 2016, and Plaintiff filed his Reply (#92) on February 1, 2016. The Court conducted a hearing in this matter on February 8, 2016.

**BACKGROUND**

Plaintiff Dante Magdaluyo, Jr., who represents himself in this action, is employed as a dealer at Defendant MGM Grand Hotel casino. Plaintiff alleges in his one page complaint that he has been the victim of a conspiracy by his superiors and co-workers to subject him to a course of discrimination, harassment, retaliation and defamation. *See Complaint (#5)*. Defendant has filed a motion to dismiss for failure to state a claim which remains pending before the Court.

On or about November 28, 2013 Plaintiff left his backpack in the dealer's quiet room. Without Plaintiff's permission, another employee moved his backpack from the quiet room to the outer main dealer's room. Plaintiff was able to review the video recording in the quiet room which showed the employee moving his backpack out of the room. Plaintiff completed a Voluntary Statement on November 28, 2013 which he submitted to MGM's security department and in which

he requested that video surveillance recording in the quiet room be preserved. *Motion (#87), Exhibit 1, pg. 1*. He also demanded the opportunity to view the video surveillance recording for the "main dealer's room" so that he could determine whether someone searched his backpack as he suspected. *Id., pg. 2*. Plaintiff also sent a letter to MGM's human resources office on November 28, 2013 in which he requested that the video recordings be preserved. *Exhibit 2, pg. 1*. Defendant states that the employee moved Plaintiff's backpack out of the quiet room because a cell phone inside the backpack was ringing. *Opposition (#91), pg. 4*. Defendant provided Plaintiff with the surveillance video of the quiet room, but apparently did not preserve the surveillance video recording from the main dealer's room as Plaintiff had demanded.

On December 11, 2013, Plaintiff sent an email to Defendant's human resources employee complaining of an incident that occurred on that date. According to Plaintiff's email, as he was walking by a gaming pit, a supervisor looked at him "and pretended to come out of the pit to approach me with the intention to harass and intimidate me. I ignored him." *Motion (#87), Exhibit 4*. Another employee gave Plaintiff a very angry look as Plaintiff passed by him. Plaintiff states that a third employee observed what occurred. Although Plaintiff did not specifically request that surveillance videos of this incident be preserved or provided to him, he informed the human resources employee that he was being harassed and that he intended to file a case with the EEOC if she could not help him. Plaintiff alleges that his email was sufficient to place Defendant on notice of the relevance of any surveillance video recording of the incident and required it to take steps to preserve the recording.

Planitff also submitted exhibits to the Court during the hearing on February 8, 2016. Most of these exhibits are the same as those attached to his motion. Hearing Exhibit No. 7 includes a copy of the complaint that Plaintiff filed with the EEOC on March 31, 2014. This complaint identifies Patricia Bush as MGM's Human Resources Director. Hearing Exhibit 8 purports to be a letter that Plaintiff wrote to Patricia Bush on January 6, 2014 in which he references incidents on (1) January 5 to January 6, 2014 in which employees from the cashier's cage stared at him and attempted to intimidate him; (2) January 6, 2014 in which floor supervisors watched him in a harassing manner; and (3) January 1, 2014 in which a supervisor stared at him in an angry manner.

Exhibit 8 was not attached to Plaintiff's motion or reply brief.[1]

Plaintiff subsequently served two sets of requests for production of documents on Defendant in which he requested surveillance video recordings that potentially captured a number of incidents in which he was allegedly harassed, intimidated, assaulted or battered by supervisors or coworkers. *Motion (#87), Exhibits 8 and 10.* Plaintiff also attached copies of Defendant's responses to the requests for production. *Exhibits 9 and 11.* It is not clear on what dates Plaintiff actually served his requests for production because he did not date them or attach a certificate of service showing when they were served on Defendant. He attached a certificate of service to his reply brief, however, which states that he served his first set of requests for production on August 4, 2015. Defendant served its responses to Plaintiff's first set of requests for production on September 8, 2015. *Exhibit 9, pg. 19.* Defendant served its responses to Plaintiff's second set of requests for production on October 19, 2015. *Exhibit 11, pg. 18.* Defendant's counsel represented that they received Plaintiff's requests for production approximately 30 days before they served their responses.

Plaintiff's First Set of Requests for Production requested video recordings depicting the incidents on November 28, 2013 and December 11, 2013. *Exhibit 8,* Request Nos. 17 and 20. It also requested video recordings depicting the incidents on January 1, 2014 (Request No. 21); and January 21, 2014 (Request No. 18). *Exhibits 8 and 9.*

Plaintiff's Second Set of Requests for Production requested video recordings depicting the incidents on February 25, 2014 (Request No. 9); May 31, 2014 (Request No. 11); July 6, 2014 (Request No. 13); July 15, 2014 (Request No. 23); September 3, 2014 (Request No. 15); November 2, 2014 (Request No. 22); November 9, 2014 (Request No. 21); November 17, 2014 (Request No. 24); November 23, 2014 (Request No. 25); December 2, 2014 (Request No. 16); December 9, 2014 (Request No. 17); January 25, 2015 (Request No. 4); March 11, 2015 (Request No. 2); and August 23, 2015 (Request No. 1). *Exhibits 10 and 11.*

. . .

---

[1] Plaintiff has not moved to compel production of video surveillance regarding the incidents that allegedly occurred on January 5 or 6, 2014. He has moved to compel production of the video relating to the alleged incident on January 1, 2014. *Exhibit 8, Request No. 21.*

Defendant objected to Plaintiff's requests for the video recordings on the grounds that they are unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence and that they are vague and ambiguous. Defendant further stated:

> Subject to the foregoing general and specific objections, Defendant does not have surveillance tapes responsive to this request. Defendant retains surveillance tapes in accordance with Nevada Gaming Commission standards and the time frame for which Plaintiff seeks is outside the required retention period.

*See, Exhibit 9,* Defendant's Response to Request No. 20 and *Exhibit 11,* Defendant's Response to Request No. 1.

In its opposition to Plaintiff's motion, Defendant reiterated that it retains surveillance tapes in accordance with Nevada Gaming Commission standards which requires that surveillance video recordings be retained for seven days. Defendant states that "there was no reason to retain any surveillance depicting alleged approaches or glares, as these alleged 'incidents' were not brought to MGM's attention." *Opposition (#91), pgs. 2-3.*

Defendant attached a copy of the Nevada Gaming Commission's Surveillance Standards for Nonrestricted Licensees. *Opposition (#91), Exhibit 7.*[2] These standards define the type of surveillance cameras that licensees must maintain and the gaming areas that must be covered and recorded. Standard 9.1 states:

> All video recordings of coverage provided by the dedicated cameras or motion-activated dedicated cameras required by these standards must be retained for a minimum of 7 days, except for recordings of detentions and questioning by security personnel, which must be retained for a minimum of thirty (30) days. All other recordings must be retained a minimum of 3 days.

*Opposition (#91), Exhibit 7.*

Plaintiff argues that Defendant should be required to produce the video recordings identified in his requests for production of documents; and if Defendant fails produce the recordings, it should be sanctioned for its failure to preserve relevant evidence. Plaintiff argues that he will be prejudiced by Defendant's failure to produce the recordings because he does not have independent witnesses

---

[2] Plaintiff submitted a copy of these standards as a hearing exhibit. *Plaintiff's Hearing Exhibit 11.*

who are willing to support his description of the incidents and he needs the recordings to prove the incidents occurred, and to refute Defendant's allegations that he is mentally ill or delusional. *Motion (#87), pg. 6.*

## DISCUSSION

A party has a duty to preserve documents or things in its possession, custody or control if it has some notice that the documents or things are potentially relevant to existing or reasonably anticipated litigation. *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002); and *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). *Pettit v. Smith*, 45 F.Supp.3d 1099, 1105 (D.Ariz. 2014) notes that the duty to preserve is triggered not only when litigation actually commences, but extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. In *Pettit*, the court held that prison officials had a duty to preserve a video recording of a use of force incident between the plaintiff-inmate and a guard. *See also LaJocies v. City of North Las Vegas*, 2011 WL 1630331 (D.Nev. April 28, 2011) (police had duty to preserve video recording of altercation in jail). Similarly, in *Peschel v. City of Missoula*, 664 F.Supp.2d 1137, 1143-44 (D.Mont. 2009), the court held that the city had a duty to preserve police videos of plaintiff's arrest for the subsequent criminal proceedings and had a further continuing duty to preserve the video recording once it was reasonably foreseeable that civil litigation would ensue.

Under the Nevada Gaming Commission standards, Defendant is obligated to retain video recordings of regulated areas for a minimum of seven days and to retain videos depicting detention and questioning of individuals by security personnel for a period of thirty days. There is no evidence that any of the incidents alleged by Plaintiff involved the detention or questioning of individuals by security personnel. Except for the incidents on November 28, 2013, December 11, 2013 and January 1, 2014, there is no evidence that Plaintiff placed Defendant on notice of the alleged incidents within seven days after they occurred. Plaintiff argues, however, that Defendant was required to preserve all of the requested video surveillance recordings after he notified Defendant that he was being harassed by supervisors and coworkers. In the absence of timely notification of a specific incident, however, Defendant did not have a duty to preserve video

recordings of the areas in which Plaintiff was working or where he might travel.  Defendant represents that by the time it received Plaintiff's first and second requests for production, the seven day retention period had long expired and it no longer had video recordings of the alleged incidents (assuming that they would have been captured by surveillance cameras).  Defendant cannot be compelled to produce documents or things that it does not have or which are not in its control.  There is also no basis to sanction Defendant for failing to preserve video recordings whens it was not notified of the alleged incidents within sufficient time to preserve the video recordings.

Some of the incidents for which Plaintiff seeks video recordings involved alleged assaults or batteries.  *See* Request No. 9 (Second Set), February 25, 2014, assistant shift boss allegedly assaulted Plaintiff; Request No. 11 (Second Set), May 31, 2014, security officer allegedly assaulted Planitiff; and Request No. 25 (Second Set), November 23, 2014, coworker allegedly "angrily punches his hand on [Plaintiff's] right ear."  Plaintiff prepared detailed written reports on November 28, 2013 regarding the removal of his backpack from the dealer's quiet room and his suspicion that it was searched in the main dealer's room.  *Motion (#87), Exhibits 1 and 2.*  He also sent an email to a human resources employee on December 11, 2013 complaining that a coworker approached him with the intention to harass and intimidate him, and that another worker gave him an angry look.  *Id., Exhibit 4.*  He also allegedly sent a written statement to Defendant's Human Resources Director on January 6, 2014 regarding recent incidents in which employees stared at him in an intimidating manner, watched him, or gave him an angry stare.  *Hearing Exhibit 8.*  Plaintiff has not explained why he did not promptly report in writing similar incidents that occurred thereafter and, in particular, did not promptly document and report alleged assaults or batteries by supervisors or coworkers.  The lack of contemporaneous complaints or reports of these incidents casts doubt on whether they occurred.

This leaves for resolution, the three incidents that Plaintiff reported or allegedly reported to Defendant within seven days of when the incidents allegedly occurred.  Plaintiff clearly placed Defendant on notice that the video surveillance recording in the main dealer's room on November 28, 2013 should be preserved based on his suspicion that another employee may have searched his backpack.  Defendant has not disputed that a surveillance camera covered the area and would have

shown whether anyone searched Plaintiff's backpack.  Defendant also has not disputed that Plaintiff notified it on December 11, 2013 of the alleged incident that occurred on that date.  Although Plaintiff did not specifically request that surveillance video of the incident be preserved, Defendant reasonably had a duty to investigate Plaintiff's allegation and to preserve any available video as part of that investigation.  Defendant has not presented any information to refute the assertion that surveillance cameras would have captured some of the alleged incident if it occurred.  Plaintiff did not produce his January 6, 2014 letter to Patricia Bush as an exhibit to his motion or reply brief.  Defendant had no opportunity to address whether it received that communication.  Therefore, the Court will not consider imposition of sanctions relating to Defendant's alleged failure to preserve and produce surveillance video of the January 1, 2014 incident.

In *Leon v. IDX Systems Corp.*, 464 F.3d at 959, the court stated that the relevance of destroyed evidence cannot be clearly ascertained because the evidence no longer exists.  The party responsible for the destruction of the evidence, therefore, "can hardly assert any presumption of irrelevance as to the destroyed documents." *Id.*  Where potentially relevant evidence is lost or destroyed prior to the commencement of litigation or the service of a discovery request under the Federal Rules of Civil Procedure, the court may sanction the party responsible for the destruction of the evidence pursuant to its inherent authority. *LaJocies v. City of North Las Vegas*, 2011 WL 1630331, at *2, citing *Leon*, 464 F.3d at 958.  The court may impose a range of sanctions for spoliation of evidence depending on the culpability of the party responsible for its destruction and the prejudice caused to the opposing party.  Such sanctions may include the giving of an adverse inference jury instruction, precluding the party from introducing evidence at trial, or in the most severe case granting the sanction of dismissal or default. *LaJocies* further states:

> [A] finding of bad faith is not a prerequisite for an adverse inference. *Glover,* 6 F.3d at 1329.  However, although a party's destruction of evidence need not be in bad faith in order for the court to impose sanctions, the party's motive or degree of willfulness or fault is relevant to the severity of the sanction to be imposed. *Advantacare Health Partners, supra, citing Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991), *cert. denied* 503 U.S. 962, 112 S.Ct. 1567, 118 L.Ed.2d 212 (1992); *Baliotis v. McNeil,* 870 F.Supp. 1285, 1291 (M.D.Pa. 1994).  Generally, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the

> prejudice suffered by the victim. *Id.* A district court's adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with that party's right to produce other relevant evidence. *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 386–87 (9th Cir. 2010).

2011 WL 1630331, at *4.

In this case, Defendant has not provided any explanation as to why it did not preserve the surveillance video of the main dealer's room on November 28, 2013 pursuant to Plaintiff's timely request. The Court must therefore conclude that Defendant simply ignored Plaintiff's request that the video be preserved. An adverse jury instruction should be given that the video recording of that incident, if produced, would be favorable to the Plaintiff's allegation that someone searched his backpack. Plaintiff did not specifically request Defendant to preserve surveillance video of the December 11, 2013 incident, although Defendant had a duty to investigate and should have preserved video of the incident if it existed. With respect to this incident, the instruction given by the court in *Pettit v. Smith*, 45 F.Supp.3d at 1114 is appropriate. The jurors should be instructed that Defendant had a duty to preserve the video if it existed and that they may, but are not required to, infer that the video recording would have been favorable to the Plaintiff. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel (#87) and for Sanctions (#88) are **granted**, in part, and **denied**, in part, as follows:

1. The jury should be instructed that the video recording of the incident on November 28, 2013, if produced, would be favorable to the Plaintiff's allegation that someone searched his backpack.

2. The jury should be instructed that Defendant had a duty to preserve the surveillance video of the incident on December 11, 2013 and that they may, but are not required to, infer that the surveillance video would have been favorable to the Plaintiff.

3. Plaintiff's motion is otherwise denied.

DATED this 16th day of February, 2016.

_____
GEORGE FOLEY, JR
United States Magistrate Judge