**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

DANTE B. MAGDALUYO, JR.,

    Plaintiff,

v.

MGM GRAND HOTEL, LLC,

    Defendant.

Case No. 2:14-cv-01806-APG-GWF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(ECF No. 121)

**ORDER DENYING PLAINTIFF'S APPEAL OF ORDER ON MOTION TO COMPEL**

(ECF No. 127)

**ORDER GRANTING DEFENDANT'S MOTIONS TO STRIKE**

(ECF Nos. 145, 147, 155)

Plaintiff Dante Magdaluyo's Second Amended Complaint alleges that defendant MGM Grand Hotel, LLC (MGM) has directed its employees to engage in an extended campaign of harassment against him.  Magdaluyo brings claims for discrimination and retaliation under Title VII, invasion of privacy, defamation, workplace violence, and intentional infliction of emotional distress (IIED).

MGM moves for summary judgment on the bases that Magdaluyo's evidence is untrustworthy and entirely uncorroborated by other evidence in the record.  MGM also makes specific arguments on each claim as to how Magdaluyo fails to meet a required element or offer alleged conduct that falls within the applicable statutes of limitations.

I grant MGM's motion for summary judgment on the Title VII, defamation, workplace violence, and IIED claims.  For these claims, even viewing the evidence in the light most favorable to Magdaluyo, he fails to state a claim.  I deny MGM's motion for summary judgment

as to the claim for invasion of privacy because I cannot determine as a matter of law that MGM did not allow or encourage employees to search Magdaluyo's backpack or that such searches would not be highly offensive to a reasonable person.

I deny Magdaluyo's appeal (ECF No. 127) of Magistrate Judge Foley's order on Magdaluyo's motion to compel (ECF No. 125). I agree with the judge that Magdaluyo's request for a detailed schematic of the entire casino's video surveillance system is overbroad and irrelevant, especially to his surviving claim. MGM has produced discovery with respect to its video retention policy, which is relevant.

I also grant MGM's request to strike Magdaluyo's "objections" and "motions to strike" (ECF Nos. 144–147), as they are inappropriate attempts to evade the page limit for argument, rather than true evidentiary objections.

## I. BACKGROUND

Magdaluyo has worked at MGM as a dealer since 1993. He alleges that in 1996 an incident occurred at a baccarat tournament where a valuable chip went missing and MGM management suspected him of theft. ECF No. 21 at 4. While management never accused him directly, Magdaluyo alleges that thereafter he was "continuously being watched very closely from 1996–2013, then MGM employees started to search [his] bag in 2012–2014." *Id.* at 5.

Magdaluyo maintained journal entries of hundreds of incidents or interactions that he believes demonstrate a conspiracy by MGM and its employees to intimidate, ostracize, and harass him. *See* ECF Nos. 138-1–138-14. The alleged incidents mostly involve employees "gang staring," approaching Magdaluyo aggressively, whistling to annoy him, pretending to be scared of him on camera, and the like.

A full list of alleged incidents would be repetitive, but the following are independently germane to evaluating Magdaluyo's claims:

- In 2008, supervisor Phil Rosen told Magdaluyo that he "hates Filipinos and that the United States should invade the Philippines." ECF No. 21 at 8.

- In 2009, Rosen pointed at Magdaluyo and told several coworkers, "This guy is a thief and

1    a scam artist." *Id.*

2    •  On November 29, 2013, an MGM employee removed Magdaluyo's personal backpack

3      from the employee break room and placed it outside the door.  Magdaluyo believes she

4      moved it so that another employee could search it, and contends its contents were rifled

5      through when he found it. *Id.* at 5.

6    •  Magdaluyo was attacked by coworkers twice while on the job, once in 2012 and once in

7      2013.  In the first incident, a pit boss struck Magdaluyo in the head with his elbow; in the

8      second, a floor supervisor punched him in his shoulder. *Id.* at 13–14.

9      Magdaluyo repeatedly complained to MGM Human Resources about the harassment.  The

10   first recorded complaint took place in 2001; complaints resumed in 2010 and occurred fairly

11   frequently thereafter. *See* ECF No. 142 at 18.  He also lodged an EEOC complaint in 2014. ECF

12   No. 21 at 25.  MGM disputes that it has accused Magdaluyo of stealing, searched him or his

13   effects, or directed employees to harass or ostracize him. *See* ECF No. 121.

14   **II. ANALYSIS**

15      Summary judgment shall be granted when "there is no genuine dispute as to any material

16   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The

17   moving party "has the initial burden of showing the absence of a genuine issue of material fact."

18   *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 863 F. Supp. 1237,

19   1239 (D. Nev. 1994) (citations omitted).  "A material issue of fact is one that affects the outcome

20   of the litigation and requires a trial to resolve the differing version of events." *Id.* (citations

21   omitted).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving

22   party to set forth specific facts showing that there is a genuine issue for trial. *Id.* (citations

23   omitted).  The non-moving party "may not rely on denials in the pleadings but must produce

24   specific evidence, through affidavits or admissible discovery material, to show that the dispute

25   exists." *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

26   / / / /

27   / / / /

28

**A.  Title VII Claims**

Read permissively, Magdaluyo offers three theories to support his Title VII claim.  First, he contends he was subjected to a hostile work environment based on his national origin.  He then claims that when he engaged in protected activity to address that harassment, he was subjected to adverse employment action(s) and further harassed in retaliation.

*1. National Origin Harassment*

Magdaluyo claims that he was subjected to a hostile work environment because he is Filipino, which is a protected characteristic under Title VII.  To prevail, he must show that the harassment was actually due to the protected characteristic. *See, e.g.*, *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002).  Magdaluyo claims harassment for over a decade due to his national origin, but the only evidence that connects the alleged harassment with his heritage is the alleged comment by a direct supervisor in 2008 stating "I hate Filipinos and the U.S. should invade the Philippines." ECF No. 21 at ¶ 22.  This statement, even if credited, does not establish an overarching racial animus against Filipinos at MGM that could explain an alleged conspiracy of harassment involving 30 to 50 employees over more than ten years.  Courts have held that "'stray' remarks are insufficient to establish discrimination." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990).

*2. Retaliatory Adverse Employment Action*

To establish retaliation, Magdaluyo must show that "(1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two events." *See Passantino v. Johnson and Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).  Magdaluyo engaged in protected activity with his repeated complaints to MGM's human resources department, as well as his 2014 EEOC complaint.  Magdaluyo could be understood to make a Title VII claim that he suffered an adverse employment action in retaliation for protected activity based on his exclusion from the dealers' Toke Committee.  He claims that in 2011 the leader of the Toke Committee replaced Magdaluyo with one of the leader's Caucasian friends. ECF No. 21 at ¶ 89.  This claim is, however, time-

1    barred as it was brought in 2014 and thus not within 300 days of the alleged adverse action. 42

2    U.S.C. § 2000e-5(c).

3              *3. Retaliatory Harassment*

4         Rather than complain about typical adverse employment actions, Magdaluyo's primary

5    complaint is that MGM directed its employees to harass him, creating a hostile work

6    environment.  Retaliatory harassment claims require the same showing as complaints about an

7    adverse employment action, except instead of an adverse action the complainant must show that

8    he was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [his]

9    employment and create an abusive working environment. . . . The working environment must

10   both subjectively and objectively be perceived as abusive." *Brooks v. City of San Mateo*, 229

11   F.3d 917, 923 (9th Cir. 2000) (citations omitted).  Unlike his adverse employment action claim,

12   some of the alleged harassment took place within the Title VII statute of limitations period. *See,*

13   *e.g.*, ECF No. 138-1 at 74–75 (describing alleged improper bag search in November 2013).

14        The overwhelming majority of the conduct that Magdaluyo complains of, and that he

15   documents extensively, is not actionable under Title VII. *See Oncale v. Sundowner Offshore*

16   *Svcs., Inc.*, 523 U.S. 75 (1998) (explaining that Title VII is not a general civility code).  This

17   includes his allegations of staring, whistling, generic banter, and the like.  Even if some of the

18   alleged conduct rises to the level of creating an abusive workplace under Title VII, Magdaluyo

19   has failed to demonstrate the connection between his protected activity and the alleged

20   harassment.  Title VII plaintiffs are required to affirmatively establish, by use of specific

21   evidence, a but-for connection between protected activity and resultant harassment. *Univ. of*

22   *Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013).  The closest Magdaluyo comes to

23   such an attempt is the following statement and similar ones: "Mr. Magdaluyo perceives the

24   discipline as entrapment and retaliation," and "[i]f not for the lawsuit, [he] would not have been

25   disciplined." ECF No. 142 at 27.  Such speculation is insufficiently specific to carry

26   Magdaluyo's burden under *Nassar*, so his Title VII claim fails.

27        I therefore grant MGM's motion for summary judgment as to all Title VII claims.

28

                                        5

**B. Invasion of Privacy**

Magdaluyo claims MGM has invaded his privacy in two ways.  First, he claims MGM repeatedly directed employees to clandestinely search his backpack, which was an "unreasonable intrusion into another's seclusion or personal life." ECF No. 142 at 34.  He also claims that MGM has caused "public disclosure of private facts" by circulating rumors about him among his coworkers. *Id.* at 35.

> *1. Intrusion Upon Seclusion*

To recover for the tort of intrusion, a plaintiff must establish: "(1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994) (citing Restatement (Second) of Torts § 652B)).  "The question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations," and is therefore a matter usually to be resolved by a jury. *See id.* at 1449.

In this case, genuine issues of material fact remain as to the alleged backpack searches. Magdaluyo states that on several occasions he found his backpack moved, with the contents rifled through. ECF No. 21 at 10, 12–13; ECF No. 138-1 at 69, 74–75, 86, 95, 132.  Surveillance footage of the dealer quiet room from November 28, 2013 shows an employee moving Magdaluyo's bag and setting it outside the door, beyond view of the camera. *See* ECF No. 236. MGM failed to preserve video of the area where the bag was placed despite being timely put on notice by Magdaluyo.  Magistrate Judge Foley therefore held that "[t]he jury should be instructed that the video recording of the incident on November 28, 2013, if produced, would be favorable to [Magdaluyo's] allegation that someone searched his backpack." ECF No. 95.  MGM contested that instruction by "disput[ing] that the camera in the main dealer's room would have shown whether anyone searched [Magdaluyo's] backpack, because a large column blocks from the view of that camera the dealer's quiet room entrance." ECF No. 99 at 2.  As an initial matter, MGM offered no proof to support that claim at the time, nor does it offer any now.  In addition, even if

the door itself was blocked from view, video from the main room could have shown if the

backpack was further moved, and who moved it.

MGM also argues that even if one or more employees searched Magdaluyo's bag on

multiple occasions, "there is no evidence to impute liability to MGM." ECF No. 154 at 19.

Magdaluyo, however, offers extensive statements detailing incidents that suggest MGM

supervisors suspected that he had stolen or is stealing from the casino.  A jury could infer from

this that any backpack searches were at the behest of, or at least with the acquiescence of, MGM.

MGM insists that Magdaluyo's evidence consists only of "self-serving notes, complaints, and

declarations" that are contradicted by the testimony of all MGM employees. ECF No. 121 at 2.

But this is a credibility issue for the jury to decide.  Magdaluyo's affidavits are not "conclusory"

or bereft of detail—on the contrary, they are incredibly detailed and extensive.  MGM's

contention that Magdaluyo is imagining or contorting the events he describes raises genuine

issues of material fact and witness credibility.  Summary judgment is therefore inappropriate on

Magdaluyo's claim for intrusion upon seclusion arising from the alleged searches of his

backpack.

### 2. *Public Disclosure of Private Facts*

A claim for public disclosure of private facts under Nevada law requires proof that

private facts were publicly disclosed and that disclosure was offensive and objectionable to a

reasonable person of ordinary sensibilities. *Kuhn*, 865 F. Supp. at 1449.  "Public disclosure"

means "that the matter is made public, by communicating it to the public at large, or to so many

persons that the matter must be regarded as substantially certain to become one of public

knowledge." *Id.* (citing Restatement (Second) of Torts § 652D cmt. a (1977)).  Neither the

complaint nor Magdaluyo's response to MGM's motion contends that any rumors or private

facts were spread beyond his immediate coworkers.  This does not constitute a disclosure to the

public at large, and thus Magdaluyo fails to state a claim under this theory of invasion of privacy.

////

////

1

### C.  Defamation

2

Magdaluyo claims that MGM has defamed him through its employees' statements

3

characterizing him as a thief. ECF No. 21 at 31.  MGM responds that Magdaluyo does not allege

4

specific defamatory statements falling within the two-year statute of limitations period for

5

defamation claims under Nevada law. Nev. Rev. Stat. § 11.190(4)(c).  Thus, the only allegations

6

that may be considered are those that occurred on or after March 12, 2013.

7

The only specific statements of this nature I can find fall outside the limitations period.

8

*See, e.g.*, ECF No. 21 at ¶ 23 (claim that Magdaluyo's supervisor, Phil Rosen, told another

9

employee in 2009 that Magdaluyo was "a scam artist and a thief"); ECF No. 138-1 at 68 (claim

10

that supervisor Linda Pate joked, "I have to watch Klepto Dante over here").  Magdaluyo does

11

not offer evidence of statements made within the limitations period to support a defamation

12

claim.  I therefore grant MGM's motion for summary judgment on the defamation claim.

13

### D.  Workplace Violence

14

In his complaint, Magdaluyo alleges two incidents of workplace violence for which he

15

seeks to hold MGM responsible: one in 2012 and one in January 2013.  MGM responds that

16

because the complaint was filed in May 2015, neither is within the two-year statute of limitations

17

period. *See* Nev. Rev. Stat. § 11.190(4)(c).  Rather than contest this, in his response to the motion

18

Magdaluyo adds five alleged assaults and batteries that fall within the limitations period. ECF

19

No. 142 at 43–45.  MGM does not address these additional allegations in its reply.

20

Magdaluyo cannot rely upon incidents newly disclosed in his response to the motion.

21

But even if I interpret Magdaluyo's inclusion of the five additional incidents as a request to add a

22

supplemental pleading under Rule 15(d), none supports a claim for which MGM could be liable.

23

In the first incident, Magdaluyo describes a confrontation between himself and a fellow dealer,

24

Willis Nelson, who Magdaluyo believes has been directed by MGM to test Magdaluyo's

25

patience by serially whistling at him.  Nelson reportedly "charg[ed] up to [Magdaluyo's] face

26

with the intention to head butt him . . . while intentionally spraying saliva on Magdaluyo's face."

27

ECF No. 142 at 43.  But under Nevada law, MGM is not liable unless Magdaluyo proves: "(a)

28

the employee's conduct was not an independent venture, (b) the employee's conduct was committed in the course of his or her assigned tasks, and (c) the employee's conduct was reasonably foreseeable in light of the nature and scope of his or her employment." *Vaughan v. Harrah's Las Vegas, Inc.*, 238 P.3d 863 (Nev. 2008) (citing Nev. Rev. Stat. § 41.745). Magdaluyo fails to explain how, even if MGM had directed Nelson to try Magdaluyo's patience by whistling, it was reasonably foreseeable that Nelson would commit an assault and battery against Magdaluyo.

The other four incidents are not assaults or batteries. Under Nevada law, a civil assault claim requires the plaintiff to show the actor "(1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, § 21 (1965)). For a battery claim, the second element is instead that "such contact did occur." *Id.* The incident Magdaluyo offers as Nelson's second assault and battery is preserved on video and available to the court. *See* ECF No. 248. The video does not show an assault or battery. Nelson and Magdaluyo appear to exchange words, stand face-to-face for about ten seconds but do not touch each other, and then the parties break and Nelson walks away. The Romanchik incident involves an MGM security guard who allegedly walked next to Magdaluyo, "brushing [Magdaluyo's] tux jacket with his body." ECF No. 138-1 at 147. A reasonable jury could not find that Romanchik intended or caused harmful or offensive contact. Guy Lambert, Magdaluyo's floor supervisor, allegedly "slapped his hands on Mr. Magdaluyo's shoulders from behind." ECF No. 142 at 45. Milorad Nikolic, a dealer, allegedly patted Magdaluyo's chest pocket. *Id.* In neither case does Magdaluyo explain how these actions demonstrate that the individuals intended to cause harmful or offensive physical contact, and no reasonable jury could so find. Any unusual offense taken by Magdaluyo cannot be ascribed backward onto either Lambert's or Nikolic's intent.

### E. Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress (IIED) claim, Magdaluyo must show: "(1) extreme and outrageous conduct with either the intention of, or reckless

disregard for, causing emotional distress, (2) [Magdaluyo's] having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981). "Liability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts ¶ 46 cmt d. (1965)). The claim is subject to a two-year statute of limitations. Nev. Rev. Stat. ¶ 11.190(4)(c). Thus, the only allegations that may be considered are those that occurred on or after March 12, 2013.

The majority of Magdaluyo's alleged incidents, like those supporting his defamation claim, fall outside the limitations period or are undated. Magdaluyo does not help the court by citing to "Ex. 1-269," which is the entirety of the hundreds of pages of evidence he has submitted. ECF No. 142 at 40. Magdaluyo offers as specific incidents his confrontation with Willis Monroe, as well as an incident where a supervisor allegedly watched him closely with "an angry stare." *Id.* at 40–41. Both incidents are captured in videos submitted as evidence. ECF Nos. 240, 248. After reviewing those videos, I conclude neither incident could constitute "extreme or outrageous conduct" by MGM. In the video with the supervisor, he appears to stand and watch Magdaluyo work, similar to another supervisor watching the table behind him. Even if he was making an angry face, this cannot rise to the high standard of IIED. The Nelson incident, as described by Magdaluyo, is perhaps closer to outrageous conduct, but as discussed above, the conduct cannot be imputed to MGM. Magdaluyo fails to create a genuine issue of material fact that would support his IIED claim. I therefore grant MGM's motion for summary judgment on that claim.

**F. Remaining Motions**

Magdaluyo appeals Magistrate Judge Foley's discovery order (ECF No. 125) that denied his request to compel MGM to produce its written casino surveillance system plan. MGM responds that Magistrate Judge Foley was correct to find the request overbroad and irrelevant, especially where he found that "the only portion of Defendant's policies and procedures regarding surveillance that the Court finds relevant—that dealing with video retention—has

already been produced." ECF No. 125 at 9. Magdaluyo contends that Title VII directs that "employers must adhere to their company policies and failure to do so supports an inference of discrimination." ECF No. 129 at 5. Because I grant summary judgment on the Title VII claims, I evaluate relevance only to the claim for intrusion upon seclusion. Magistrate Judge Foley's order is not "clearly erroneous or contrary to law." Local Rule IB 3-1(a). Magdaluyo's appeal of that order is denied.

Soon after filing his response to MGM's motion for summary judgment, Magdaluyo filed four documents purporting to object to evidence offered in that motion. Two are styled as "objections" (ECF Nos. 144 and 146) and two as "motions to strike" (ECF Nos. 145 and 147). MGM filed its own motion (ECF No. 155) to strike these four filings as improper attempts to evade the page limits for argument, rather than genuine evidentiary objections. Upon a review of the documents, I agree with MGM. While components of the argument could be cast as quasi-evidentiary objections, the documents primarily disagree with the substance of the claims and evidence in the motion. Magdaluyo has been instructed repeatedly to observe page limits and other procedural requirements, and the court will not sift through the hundreds of pages of filings to identify valid objections.

III.    CONCLUSION

IT IS THEREFORE ORDERED that MGM's motion for summary judgment **(ECF No. 121) is GRANTED in part and DENIED in part** as more fully set forth in this order.

IT IS FURTHER ORDERED that Magdaluyo's appeal of Magistrate Judge Foley's order on the motion to compel **(ECF No. 127) is DENIED**.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

1  IT IS FURTHER ORDERED that the clerk of court shall **STRIKE** Magdaluyo's motions

2  to strike evidence **(ECF Nos. 145 and 147)** and the accompanying objections **(ECF Nos. 144**

3  **and 146).**  MGM's motion to strike those motions and objections **(ECF No. 155) is accordingly**

4  **GRANTED**.

5  DATED this 24th day of February, 2017.

6

7  _____

8  ANDREW P. GORDON
   UNITED STATES DISTRICT JUDGE